[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13066
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-00405-TWT-JSA-5


UNITED STATES OF AMERICA,

Plaintiff - Appellee,


versus


ANDREW SMITH,
a.k.a. Dru,

Defendant - Appellant.


_____

No. 15-14044
Non-Argument Calendar
_____

D.C. Docket No.  1:14-cr-00405-TWT-JSA-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,


versus

JULIUS C. APPLING,

                                             Defendant - Appellant.

_____

No. 15-15047
Non-Argument Calendar
_____

D.C. Docket No.  1:14-cr-00405-TWT-JSA-2

UNITED STATES OF AMERICA,

                                             Plaintiff - Appellee,

versus

TAJ J. TILLISON,

                                             Defendant - Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(September 26, 2016)

Before HULL, MARCUS, and EDMONDSON, Circuit Judges.

PER CURIAM:

    Andrew Smith, Julius Appling, and Taj Tillison appeal their sentences of 33

months, 56 months, and 51 months, respectively, imposed after pleading guilty to

2

one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344, 1349.   Smith, Appling, and Tillison argue that the district court erred by enhancing their sentences when it incorrectly counted, as victims, persons who voluntarily provided access to their debit card information, which Smith, Appling, and Tillison then used to cash fraudulent checks.

We review a district court's application and interpretation of the Guidelines *de novo* and its factual findings for clear error.  *United States v. Lee*, 427 F.3d 881, 892 (11th Cir. 2005).

Pursuant to § 2B1.1(b)(2) of the Sentencing Guidelines, a two-level enhancement is applied if the offense involved 10 or more victims; a four-level enhancement is applied if the offense involved more than 50 but fewer than 250 victims.  U.S.S.G. § 2B1.1(b)(2)(A), (B).  Thus, the appropriate enhancement calculation depends on the number of "victims" involved.  A "victim" means a person who sustained an actual loss or a bodily injury as a result of the offense.  *Id.* comment. (n.1).  In cases involving "means of identification," Application Note 4(E) provides that a "victim" also includes "any individual whose means of identification was used unlawfully or without authority."  *Id.*, comment. (n. 4(E)); U.S.S.G. App. C. vol. III, Amend. 726.

"Means of identification" has the meaning given by 18 U.S.C. § 1028(d)(7), "except that such means of identification shall be of an actual (i.e., not fictitious)

3

individual, other than the defendant or a person for whose conduct the defendant is accountable under §1B1.3 (Relevant Conduct)."  U.S.S.G. § 2B1.1, comment. (n. 1).  The "means of identification" include "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any . . . unique electronic identification number, address, or routing code."  18 U.S.C. § 1028(d)(7)(C).

We apply traditional statutory construction rules to interpret the language of Sentencing Guideline enhancements.  *United States v. Hall*, 704 F.3d 1317, 1321 (11th Cir. 2013).  We will first give the language in the guideline its plain and ordinary meaning.  We will consider, not only the bare meaning of the word, but also its placement and purpose in the guidelines; "[w]e will not rewrite the guidelines by reading definitions more broadly than their plain language indicates." *Id.*

We have addressed similar language in the aggravated identity theft statute, which provides that anyone who "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall . . . be sentenced."  See 18 U.S.C. § 1028A(a)(1).  We determined that to establish the "without lawful authority" element of aggravated identity theft, the government was not required to show that the defendant obtained another person's identification documents by stealing.  *United States v. Hurtado*, 508 F.3d 603, 607

4

(11th Cir. 2007), *abrogated by on other grounds by Flores-Figueroa v. United States*, 556 U.S. 646, 129 S. Ct. 1886, 173 L. Ed. 2d 853 (2009).  We noted that the plain language of this phrase indicated "Congress's intent to prohibit more than just the defendant's transfer, possession, or use of identification that was obtained by theft by that defendant."  *Id.*  We explained that "our reading of the plain language to prohibit the possession or use of another person's identification that was obtained by methods other than stealing does not lead to absurd results" because "[i]t is not absurd to conclude that Congress also intended to deter the purchase of identification documents by money."  *Id.* at 608 n. 6.

The district court did not err by enhancing Smith's, Appling's, and Tillison's sentences because it correctly counted the number of victims.  The district court correctly counted, as victims, persons who voluntarily provided access to their debit card information, which Smith, Appling, and Tillison then used to cash fraudulent checks: Smith, Appling, and Tillison used the debit card information in an unlawful way, regardless of whether Smith, Appling, and Tillison had authority to have the debit card information.

**AFFIRMED.**